**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW JERSEY *ex rel*. RAFI KHATCHIKIAN and IVAN TORRES,<br><br>*Plaintiffs/Relators,*<br><br>v.<br><br>PORT IMPERIAL FERRY CORPORATION; PORT IMPERIAL FERRY CORPORATION d/b/a NY WATERWAY; ARTHUR IMPERATORE, President; ALAN WARREN, Vice President; ROMULUS DEVELOPMENT CORP.; BILLYBEY FERRY COMPANY, LLC; WILLIAM WACHTEL; ABC CORPORATIONS 1-10 (same names being fictitious) and JOHN DOES 1-10 (same names being fictitious),<br><br>*Defendants.* | Civil Action No.: 2:16-cv-2388 (KM) (AME) |

---

**BRIEF IN SUPPORT OF DEFENDANTS'**

**RENEWED MOTION TO DISMISS COUNT SIX**

---

**BALDASSARE & MARA, LLC**
75 Livingston Ave., Suite 101
Roseland, New Jersey 07068
973-200-4066

*Attorneys for Defendants
Port Imperial Ferry Corporation,
Port Imperial Ferry Corporation
d/b/a NY Waterway, Arthur Imperatore,
Romulus Development Corp., and
Billybey Ferry Company LLC*

*On the brief:*

Jennifer Mara, Esq.
Michael Baldassare, Esq.

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................. 1

II. PROCEDURAL HISTORY ................................................................... 2

III. FACTUAL BACKGROUND ................................................................. 2

IV. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CWA CLAIM. ................................................................ 5

    A. Only strict compliance with the CWA's notice provisions confers subject matter jurisdiction on a federal court. ................................. 6

V. JURISDICTIONAL DISCOVERY FIRMLY ESTABLISHES THAT PLAINTIFFS CANNOT INVOKE THIS COURT'S SUBJECT MATTER JURISDICTION BECAUSE THEY PROVIDED NO STATUTORY NOTICE. ............ 8

    A. Introduction ................................................................... 8

    B. The Original Complaint in 2016 ....................................... 9

        1. Plaintiffs concede they provided no notice prior to the filing of the Original Complaint in April 2016. ........................ 9

        2. Plaintiffs try to justify the lack of notice prior to April 2016 by inventing a conflict of law, blaming the U.S. Attorney's Office, and making assertions "upon information and belief." ........... 13

    C. The First Amended Complaint filed in 2020 ..................... 15

        1. The October 2018 letter is facially deficient and does not constitute CWA notice. ................................................ 15

        2. Plaintiffs try to save the October 2018 letter with their "augmentation" theory. ............................................ 17

VI. CONCLUSION ............................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**<u>Cases</u>**

*Assateague Coastkeeper v. Alan and Kristin Hudson Farm*,
  727 F. Supp. 2d 433 (D. Md. 2010) ................................................................. 15, 16

*Bettis v. Ontario*,
  800 F. Supp. 1113 (W.D.N.Y. 1992) ....................................................................... 7

*Cal. Sportfishing Prot. All. v. USA Waste of Cal., Inc.*,
  No. 11-CV-2663, 2012 WL 2339810 (E.D. Cal. June 19, 2012) ........................... 10

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of N.Y.*,
  273 F.3d 481 (2d Cir. 2001) ......................................................................... 7, 12, 17

*City of Newburgh, v. Sarna*,
  690 F. Supp. 2d 136 (S.D.N.Y. 2010) ........................................................... 6, 7, 12

*Coll. Park Holdings, LLC v. Racetrac Petroleum, Inc.*,
  239 F. Supp. 2d 1322 (N.D. Ga. 2002) ................................................................. 11

*Envirowatch, Inc. v. Fukino*,
  No. 07-CV-00016, 2007 WL 1933132 (D. Haw. June 28, 2007) ........................... 11

*Forest Guardians v. U.S. Bureau of Reclamation*,
  462 F. Supp. 2d 1177 (D.N.M. 2006) ................................................................... 11

*Friend of Earth v. Laidlaw Envtl. Servs. Inc.*,
  528 U.S. 167 (2000) ................................................................................... 7, 12

*Glazer v. Am. Ecology Env't Servs. Corp.*,
  894 F. Supp. 1029 (E.D. Tex. 1995) ................................................................... 11

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
  484 U.S. 49 (1987) ................................................................................... 8, 12

*Hallstrom v. Tillamook County*,
  493 U.S. 20 (1989) ......................................................................... 7, 8, 12, 15

*Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*,
  126 F.3d 461 (3d Cir. 1997) ............................................................................... 15

*Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr., Inc.*,
  891 F. Supp. 152 (S.D.N.Y. 1995) ....................................................................... 16

*Illinois Public Interest Research Group v. PMC, Inc.*,
  835 F. Supp. 1070 (N.D. Ill. 1993) ........................................ 11

*Johnson v. Railway Express Agency, Inc.*,
  421 U.S. 454 (1975) .............................................................. 12

*Kingdomware Tech., Inc. v. United States*,
  579 U.S. 162 (2016) ................................................................ 6

*Lincoln Harbor Enters., LLC v. Hartz Mountain Indus., Inc.*,
  517 F. Supp. 3d 293 (D.N.J. 2021) ........................................ 11

*National Envtl. Found. v. ABC Rail Corp.*,
  926 F.2d 1096 (11th Cir. 1991) .............................................. 8

*Olympians for Pub. Accountability v. Port of Olympia*,
  No. C09-5756, 2011 WL 62147 (W.D. Wash. Jan. 7, 2011) ...... 11

*Protect Our Eagles' Trees (POETs) v. City of Lawrence, Kan.*,
  715 F. Supp. 996 (D. Kan. 1989) .......................................... 15

*Pub. Interest Research Group v. Windall*,
  51 F.3d 1179 (3d Cir. 1995) ............................................... 5, 8

*Scott v. E.I. Dupont de Nemours & Co.*,
  No. 06-CV-3080, 2009 WL 901135 (D.N.J. Apr. 1, 2009) ...... 11

*Sierra Club Ohio Chapter v. City of Columbus*,
  282 F.Supp.2d 756 (S.D. Ohio 2003) .................................... 16

*Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc.*,
  963 F. Supp. 395 (D.N.J. 1997) .............................................. 8

*Walls v. Waste Res. Corp.*,
  761 F.2d 311 (6th Cir. 1985) .................................................. 7

*Washington Trout v. Scab Rock Feeders*,
  823 F. Supp. 819 (E.D. Wash. 1993) ..................................... 15

*Zands v. Nelson*,
  779 F. Supp. 1254 (S.D. Cal. 1991) ....................................... 11

**Statutes**

33 U.S.C. § 1251 ...................................................................... 6

33 U.S.C. § 1365 ................................................... 3, 4, 5, 6, 10

iv

**<u>Regulations</u>**

40 C.F.R. § 135 ................................................................................. 3, 4, 6, 7, 15, 16, 17

## I.   **PRELIMINARY STATEMENT**

Plaintiffs cannot meet their burden to establish that this Court has subject matter jurisdiction over their CWA claim.   To the contrary, jurisdictional discovery has revealed the following:

- Plaintiffs concede that no CWA notice, of any kind, was sent to Defendants or any government agency before the Original Complaint was filed on April 28, 2016.   Once the Court concludes that the 60-day notice period runs prior to the filing of the Original Complaint, *infra*, Section V.B, the inquiry ends and Count Six should be dismissed with prejudice.

- Plaintiffs concede that the October 2018 letter does not, by itself, satisfy the CWA. Given the facial deficiencies in that letter, *infra*, Section V.C, it is not surprising that Plaintiffs have conceded as much.

- Plaintiffs contend that CWA notice was provided based on the October 2018 letter as "augmented" by other information, allegations and guesses.   Of course, there is no legal support that a woefully inadequate letter can become sufficient based on, as Plaintiffs contend, what the U.S. Attorney's Office said and did, or because Plaintiffs' counsel made a tip to the EPA, or based upon "information and belief" that the relevant regulatory agencies knew of these allegations.

Plaintiffs' sworn interrogatory responses reiterate many of their prior unpersuasive arguments.   For example, Plaintiffs imagine there is a "conflict" between the CWA and the FCA and that, therefore, they were entitled to ignore the CWA's notice provisions.   Of course, the FCA does not address, let alone preclude, Plaintiffs' ability to send a fulsome CWA notice *months before any lawsuit was filed*.   Similarly, Plaintiffs repeatedly blame the U.S. Attorney's Office for the lack of CWA notice, claiming that Plaintiffs relied on the USAO to provide notice.   In the end, Plaintiffs cannot avoid the voluminous, well-settled and non-controversial case law, statutes and regulations that establish why Count Six should be dismissed with prejudice.

## II.      PROCEDURAL HISTORY

On October 7, 2021, the Court granted Defendants' motions to dismiss seven of the eight counts in the First Amended Complaint ("FAC").  ECF Nos. 38-39.  Specifically, the Court dismissed Counts 1-4 and 7-8 without prejudice and denied the motion as to Count Six, Plaintiffs' CWA citizen suit claim, without prejudice to renewal following jurisdictional discovery.  ECF Nos. 38-39.  The Court directed the parties to conduct jurisdictional discovery.  ECF No. 39.

Initially, the parties disputed whether jurisdictional discovery encompassed alleged notice given to Defendants before the filing of the Original Complaint or before the filing of the FAC.  *See* ECF Nos. 40-41.  Defendants noted the law governing CWA notice looked only at notice given 60 days prior to the Original Complaint, while Plaintiffs argued that notice prior to FAC controlled.  *See* ECF Nos.  46-48.  Judge Espinosa did not conclusively decide the legal issue, instead deciding that Defendants could raise the arguments in support of their renewed motion to dismiss at a later date.  ECF 50 at 4-5.  Judge Espinosa permitted jurisdictional discovery that "encompassed any notice provided by Plaintiffs to Defendants before the filings of both the initial and the amended complaints."  ECF No. 50 at 5.  The parties then conducted jurisdictional discovery.

On June 21, 2022, the parties had a status conference before Judge Espinosa concerning the close of jurisdictional discovery and Defendants renewing their motion to dismiss Count Six with prejudice.  Plaintiffs confirmed that they would not be moving to amend the FAC concerning the claims the Court dismissed. ECF No. 57.  The parties agreed that jurisdictional discovery closed as of June 27, 2022.  *Id.* ¶ 4.  Defendants were directed to renew their motion to dismiss Count Six on or before July 29, 2022.  *Id.* ¶ 9.

Defendants now move under Federal Rule of Civil Procedure 12(b)(1) to dismiss Count Six of the FAC with prejudice for lack of subject matter jurisdiction.

## III.      FACTUAL BACKGROUND

On April 28, 2016, Rafi Khatchikian, as the only plaintiff, filed the Original Complaint under seal in this Court.  ECF No. 1.  The Complaint named NYWW, Imperatore, and Warren as

defendants. ECF No. 1. The Complaint asserted nine claims, including Count Six that alleged all Defendants violated the CWA. *Id.* at pp.12-23.[1]

In sum and substance, the Original Complaint alleged that at various unspecified times after September 2013, Defendants disposed of sullage into the Hudson River through various methods, disposed of oil and oil filters, and spilled fuel into the Hudson River in July 2015 and at other times. *Id.* ¶¶ 9, 13-30, 33. These alleged discharges formed the basis for the CWA claim. ECF No. 1 at 18 ¶ 3; ECF No. 1 at 11 ¶ 33.

Over two years later, on November 17, 2020, Rafi Khatchikian and Ivan Torres filed the FAC, also under seal. ECF No. 10. This was the first time Torres was named as a plaintiff in the case. *Compare* ECF No. 1, *with* ECF No. 10. The FAC alleged the unlawful disposal of sullage, oil, and fuel spills. ECF No. 10 ¶¶ 127-219.

On December 3, 2020, the Court unsealed the FAC and ordered it to be served on the Defendants. ECF No. 13. On or about December 4, 2020, counsel for Plaintiffs served the FAC on counsel for Defendants.

On April 2, 2021, Defendants filed a motion to dismiss the FAC. ECF No. 19. The FAC alleged claims under the federal Act to Prevent Pollution from Ships, 33 U.S.C. § 1901, and retaliation against Khatchikian in violation of the New Jersey False Claims Act; however, Plaintiffs voluntarily withdrew those claims on July 16, 2021. ECF No. 33. On October 7, this Court dismissed Counts One, Two, Three, Four, Seven and Eight without prejudice, leaving the possibility that Plaintiffs might amend. ECF No. 39. Of the claims in the FAC, only Count Six remained. This Court instructed the parties to engage in jurisdictional discovery "on whether this Court possesses subject matter jurisdiction over this claim." ECF No. 30.

Jurisdictional discovery confirmed that Plaintiffs did not serve Defendants with the 60-day pre-suit notice required by the CWA statute and corresponding regulations. *See* 33 U.S.C. § 1365(b); 40 C.F.R. §§ 135.1 to 135.3. In jurisdictional discovery, Defendants asked Plaintiffs

---

[1] Page numbers refer to the ECF page numbers.

to provide documents "that Plaintiffs served on, mailed, or otherwise sent to each of the Defendants that Plaintiffs contend satisfy the citizen suit notice requirement in 33 U.S.C. § 1365(b) of the Clean Water Act ('CWA') and the regulations governing notice, 40 C.F.R. §§ 135.1 to 135.3" for both the Original Complaint and the FAC.  *See* Certification of Jennifer Mara, Esq. ("Mara Cert."), Ex. A at 4, 11.  Plaintiffs did not produce any such notice.  Plaintiffs effectively concede that they did not serve Defendants with the requisite notice 60 days prior to filing the Original Complaint or at any time prior to filing the Original Complaint.

Plaintiffs also did not produce any pre-suit notice that was served on the Administrator of the Environmental Protection Agency ("EPA Administrator"), the Regional Administrator of the EPA ("EPA RA"), or the Chief Administrative Officer of the water pollution control agency for New Jersey or New York ("State Officers"), prior to filing the Original Complaint, as required under the CWA Notice Regulations.  Plaintiffs' jurisdictional discovery responses indicate that Plaintiffs do not contend they served any such notice on those environmental agencies.

In responding to Defendants' document requests, Plaintiffs produced a letter dated October 4, 2018, from attorney Michael D. Fitzgerald, Esq.  Mara Cert. Ex. C.  It was addressed to "New York Waterways" at its corporate office address and opened with the salutation, "To Whom It May Concern."  *Id.*  The letter also contains a "cc:" notation asserting that a copy was sent to the EPA and the New Jersey and New York environmental agencies by email.  *Id.*  The letter is quoted in its entirety:

> New York Waterways
> 4800 Avenue at Port Imperial Boulevard
> Weehawken, New Jersey 07086
>
> To Whom It May Concern:
>
> Please accept the within letter as notification of an allegation of a violation of the Clean Water Act (33 U.S.C. § 1311) and a violation of the Act for the Prevention of Pollution from Ships, the same activities by your entity constitute violations of both New Jersey and New York State Environmental laws as the complained of conduct occurred in or on the Hudson River, East River and/or Raritan Bay.

> Over the last 3 plus years, your company, individual employees, or a combination of employees and companies have routinely participated in activities to improperly dispose of "sullage". Further, the company has routinely improperly disposed of oil filters, waste oil bilge fluids and engine compartment fluids at the Weehawken work dock location.
>
> In addition to eyewitness accounts, there are photos and videos which have been provided to the proper authorities.
>
> It is our intention, on behalf of our client, the file a complaint against New York Waterways, Billybey Ferry Co., and various individuals after the statutory 60-day waiting period.
>
> The within letter is being provided to the environmental authorities.
>
> Attached hereto please find a preservation letter which seeks the preservation of both electronic and physical evidence related to the various allegations.
>
> Be advised accordingly.

*Id.* The letter did not identify the "client" referred to therein. Many of the Defendants in this lawsuit are not named or otherwise identified in the letter. *See id.*

## IV. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CWA CLAIM.

Count Six should be dismissed because Plaintiffs cannot meet their burden to establish lack subject matter jurisdiction over Plaintiffs' CWA claim. A federal court's subject matter jurisdiction over a CWA claim requires strict compliance with the 60-day pre-filing notice provision of 33 U.S.C. § 1365. *Pub. Interest Research Group v. Windall*, 51 F.3d 1179, 1189 n.15 (3d Cir. 1995) (stating that compliance with § 1365 "is a jurisdictional prerequisite"). Among other things, the 60-day notice requirement provides the EPA and the alleged violator with an opportunity to correct the problem immediately and obviate the need for a lawsuit.

The FAC does not allege that Plaintiffs complied with the CWA's statutory notice requirement for the simple reason that they did not comply with the CWA's notice requirement. Jurisdictional discovery has confirmed as much. This is not form over substance. Compliance

5

with the CWA's notice requirement is a <u>prerequisite to this Court's jurisdiction</u>, and Plaintiffs' failure to comply with the statute divests this Court of subject matter jurisdiction.

### A. Only strict compliance with the CWA's notice provisions confers subject matter jurisdiction on a federal court.

Congress enacted the CWA "to maintain the … integrity of the Nation's waters." 33 U.S.C. § 1251(a). *See also City of Newburgh, v. Sarna*, 690 F. Supp. 2d 136, 140 (S.D.N.Y. 2010). Potential citizen-plaintiffs must give notice to the federal and state government, as well as the alleged offender, and then wait 60 days before filing suit. The statute is precise:

> No action may be commenced … prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order ….
>
> Notice under this subsection <u>shall</u> be given in such manner as the Administrator shall prescribe by regulation.

33 U.S.C. § 1365(b) (emphasis added).[2] But, Plaintiffs here failed to comply.

As to the type of notice required, the EPA has been very specific so that congressional intent to clean up the water as quickly as possible is ensured. The "EPA has specified the *<u>content requirements</u>* for a prospective plaintiff's notice letter," *Newburgh*, 690 F. Supp. 2d at 147 (emphasis added), as follows:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, <u>shall</u> include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a) (emphasis added).

---

[2] *Kingdomware Tech., Inc. v. United States*, 579 U.S. 162, 163 (2016) (stating that "[w]hen a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty").

Moreover, to ensure swift dissemination of the information – and thereby effectuate a swift cessation of the pollution, if any – the EPA has been very specific regarding the manner in which the Government *and the alleged violators* must be informed:

> (a) Notice of intent to file suit pursuant to [§1365(a)(1)] <u>shall</u> be served upon an alleged violator of an effluent standard or limitation under the Act, or an order issued by the Administrator or a State with respect to such a standard or limitation, in the following manner:
>
> (1) If the alleged violator is an individual or corporation, service of notice <u>shall</u> be accomplished by certified mail addressed to, or by personal service upon, the owner or managing agent of the building, plant, installation, vessel, facility, or activity alleged to be in violation. A copy of the notice <u>shall</u> be mailed to the Administrator of the Environmental Protection Agency, the Regional Administrator of the Environmental Protection Agency for the region in which such violation is alleged to have occurred, and the chief administrative officer of the water pollution control agency for the State in which the violation is alleged to have occurred. If the alleged violator is a corporation, a copy of such notice also <u>shall</u> be mailed to the registered agent, if any, of such corporation in the State in which such violation is alleged to have occurred.

40 C.F.R. § 135.2(a)(1) (emphasis added).  Thus, there is a clear mandate regarding what "60-day notice" means.

The CWA's notice requirements codify congressional intent.  They are "not a mere technical wrinkle of statutory drafting or formality to be waived by the federal courts." *Bettis v. Ontario*, 800 F. Supp. 1113, 1118 (W.D.N.Y. 1992)  (quoting *Walls v. Waste Res. Corp.*, 761 F.2d 311, 316 (6th Cir. 1985)).  As one court observed:

> The legislative policy behind requiring such notice is that it affords an opportunity for the alleged violator to bring itself into compliance with the CWA, or for the enforcer of first resort, the EPA or the appropriate state agency, to institute an enforcement action.

*Newburgh*, 690 F. Supp. 2d at 147 (citing *Hallstrom v. Tillamook County*, 493 U.S. 20, 29 (1989); *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of N.Y.*, 273 F.3d 481, 488 (2d Cir. 2001)).  *See also Friend of Earth v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 175-76 (2000) ("the purpose of the notice to the alleged violator is to give it an opportunity to bring itself into complete

compliance with the Act and thus … render unnecessary a citizen suit") (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987) (internal quotations omitted)).

The Third Circuit has held that the CWA's notice provision of § 1365 "is a jurisdictional prerequisite." *Windall*, 51 F.3d at 1189 n.15 (citing *Hallstrom*, 493 U.S. at 31). *See also National Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097 (11th Cir. 1991) (Powell, J., sitting by designation) (applying *Hallstrom* to the notice provision of the CWA). District Courts in New Jersey and elsewhere are in accord. *See Trump Hotels and Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 963 F. Supp. 395, 403 (D.N.J. 1997) (dismissing CWA claim for failure to comply with the notice provision) (citing *Hallstrom*, *Public Interest* and *National Envtl.*).

## V.   JURISDICTIONAL DISCOVERY FIRMLY ESTABLISHES THAT PLAINTIFFS CANNOT INVOKE THIS COURT'S SUBJECT MATTER JURISDICTION BECAUSE THEY PROVIDED NO STATUTORY NOTICE.

### A.   Introduction

There are three reasons why Plaintiffs fail to establish this Court's jurisdiction.

*First*, Plaintiffs concede that they provided absolutely no notice whatsoever to any Defendant prior to filing the Complaint in April 2016. Once the Court concludes, as it should, that the 60-day period prior to April 2016 is the controlling timeframe, this inquiry ends and Count Six should be dismissed with prejudice. There is no need to delve into the morass of documents, allegations, suppositions and "information and belief" advanced by Plaintiffs because all of that discovery tries to justify notice before the filing of the FAC.

*Second*, Plaintiffs essentially rely on a single letter in October 2018 as proper statutory notice. That fails to satisfy the statutory or regulatory requirements in numerous ways. And, the deficiencies in that letter are akin to attempted notices that have been roundly rejected by federal courts.

*Third*, Plaintiffs offer a hodge-podge of legally unsupported theories as to why they have provided statutory notice for the FAC by alternative means. For example, Plaintiffs advance a

"conflict" theory in which the CWA notice provisions may be totally ignored if that claim is filed with an FCA claim under seal.  Plaintiffs also argue an "augmentation" theory, which appears nowhere in any legal authority, whereby the Court can cobble together allegations, disparate communications to various unrelated parties and Plaintiffs' catch-all assertions provided "upon information and belief," to create an unintelligible mosaic that somehow reveals sufficient statutory notice.  Further, Plaintiffs sometimes take the simple route of just blaming the U.S. Attorney's Office for the failed notice compliance.  These are a few examples of what Plaintiffs offer as satisfactory notice for the FAC.

In every instance, settled and non-controversial law defeats Plaintiffs' attempt to salvage their CWA claim.

### B.    The Original Complaint in 2016

1.    Plaintiffs concede they provided no notice prior to the filing of the Original Complaint in April 2016.

Plaintiffs concede that they provided no notice whatsoever to Defendants or anyone else prior to filing the Original Complaint in April 2016.  Plaintiffs were given a clear opportunity to identify pre-April 2016 notice because Defendants requested that Plaintiffs:

> Identify all persons or entities to whom or to which you assert you provided written notice of your Clean Water Act allegations on or before April 28, 2016.

Mara Cert., Ex. B at 3.  There are numerous other requests and interrogatories that, one way or another, explicitly request such information for the timeframe prior to the filing of the Original Complaint.

In every instance, Plaintiffs completely ignore the Original Complaint and provide a response regarding the timeframe *prior to the filing of the FAC*.  For example, in response to a request for documents that Plaintiffs served on Defendants to satisfy the CWA citizen suit notice requirement, Plaintiffs responded that:

> Relators assert that Defendants received information that satisfies the purpose [of] the CWA's citizen suit notice requirement through various communications from or with the United States Attorney's Office for the District of New Jersey, other federal and state

> government agencies, and Relators' counsel more than 60-days *prior to the unsealing of this case and service of process of a Summons and the Amended Complaint* upon Defendants.

Mara Cert., Ex. B at 3. (emphasis added).  In response to another discovery request regarding April

2016, Plaintiffs responded:

> Plaintiffs state that, while the case was still under seal and prior to filing the Amended Complaint, Plaintiffs' counsel sent a CWA Notice Letter to NYWW via FedEx on October 4, 2018.  *See* REL000318-21 and REL000327. This notice to Defendants was augmented by a copy of the sealed Complaint, which was provided via email to Defendants' counsel by the U.S. Attorney's Office for the District of New Jersey (USAO-NJ) on December 10, 2018.  *See* REL000351. This notice to the Defendants was also augmented by numerous communications and meetings between counsel for Defendants and USAO-NJ and/or Plaintiffs' counsel, Mr. Fitzgerald *See* [pointing to various documents produced by Plaintiffs in response to discovery requests].

Mara Cert., Ex. B at 5.[3]

Plaintiffs' failure to provide CWA notice before the Original Complaint is fatal and was not cured by the filing of the FAC.  The CWA's notice requirements apply to the Original Complaint, not amended pleadings such as the FAC.  *See* ECF No. 48 (Defendants legal argument regarding the scope of jurisdictional discovery).  The CWA's 60-day notice provision precludes the commencement of an "action" until sufficient notice is given to the potential defendants and the relevant regulatory/enforcement authorities.  33 U.S.C. § 1365(b).  The CWA states: "No action shall be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged violation" to certain persons, including the alleged violator.  33 U.S.C. § 1365(b).

The rule that emerges from the long line of cases interpreting statutory notice provisions is that an "action" is "commenced" when the claim first appears in a plaintiff's pleading.  *See Cal. Sportfishing Prot. All. v. USA Waste of Cal., Inc.*, No. 11-CV-2663, 2012 WL 2339810, at *4-5 (E.D. Cal. June 19, 2012) ("[a]n action alleging violations of the CWA is 'commenced' when the

---

[3] As noted, each and every time Plaintiffs were asked about notice prior to the filing of the Original Complaint in 2016, they responded exclusively with answers regarding 2018 or later.  Thus, Plaintiffs have abandoned and/or waived any contention that CWA notice was provided in "late 2015 or early 2016."  *See* Court's Op. on MTD at ECF No. 38 at 20; *see also*, Pls.' Opp'n to MTS, ECF No. 33 at 54.

CWA claim appears in the complaint"); *Olympians for Pub. Accountability v. Port of Olympia*, No. C09-5756, 2011 WL 62147, at *3 (W.D. Wash. Jan. 7, 2011) (finding that a CWA action was "commenced" when it appeared for the first time in the amended complaint); *Scott v. E.I. Dupont de Nemours & Co.*, No. 06-CV-3080, 2009 WL 901135, at *1 (D.N.J. Apr. 1, 2009) (dismissing an NJ ERA claim because plaintiff failed to provide required notice until after the claim appeared for the first time in the amended complaint, and finding that filing a second amended complaint did not cure the failure because it did not serve as the commencement of the action) ; *Envirowatch, Inc. v. Fukino*, No. 07-CV-00016, 2007 WL 1933132, at *3-4 (D. Haw. June 28, 2007), *aff'd*, 302 F. App'x 572 (9th Cir. 2008) (holding that the action was commenced when the original complaint was filed and the court lacked subject matter jurisdiction due to plaintiffs lack of notice compliance in the first instance); *Forest Guardians v. U.S. Bureau of Reclamation*, 462 F. Supp. 2d 1177, 1184-86 (D.N.M. 2006) ("[p]rohibiting parties from sending a NOI after commencing an action and then filing a supplemental complaint advances Congress' goal of creating a sixty-day non-adversarial period during which the parties might reach a resolution without need for judicial intervention"); *Coll. Park Holdings, LLC v. Racetrac Petroleum, Inc.*, 239 F. Supp. 2d 1322, 1330 (N.D. Ga. 2002) (an action is commenced when it appears for the first time in the pleadings); *Glazer v. Am. Ecology Env't Servs. Corp.*, 894 F. Supp. 1029, 1042 (E.D. Tex. 1995) (holding that Clean Air Act claims that were in the original complaint but for which the plaintiff did not give sixty-days' notice were barred for lack of proper notice); *Illinois Public Interest Research Group v. PMC, Inc.*, 835 F. Supp. 1070, 1073 (N.D. Ill. 1993) (relying on the date of the original filing of the complaint to determine compliance with a § 1365 notice, particularly because there were "no substantive changes to the complaint" made after its original filing); *Zands v. Nelson*, 779 F. Supp. 1254, 1258-59 (S.D. Cal. 1991) (for notice and delay provision relating to a claim, an action is commenced when the claim appears for the first time in a pleading); *see also Lincoln Harbor Enters., LLC v. Hartz Mountain Indus., Inc.*, 517 F. Supp. 3d 293, 301-02 (D.N.J. 2021) (concluding that "action" in the ERA's notice provision refers to the filing of the original complaint, and noting that the allegations in the original complaint and amended complaint were

basically the same and only "somewhat different" ) [4]; Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").  *City of Newburgh*, 690 F. Supp. 2d at 147 (citing *Hallstrom*, 493 U.S. at 29; *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of N.Y.*, 273 F.3d 481, 488 (2d Cir. 2001)).  *See also Laidlaw Envtl. Serv.*, 528 U.S. at 175-76 ("the purpose of the notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus … render unnecessary a citizen suit") (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987) (internal quotations omitted)).

In *Hallstrom*, the Supreme Court recognized precisely how important and powerful the 60-day notice requirement is in the context of environmental legislation.  There, the Court held that the 60-day notice requirement of the Resource Conservation and Recovery Act's citizen suit provision was a mandatory condition precedent to commencing suit and failure to meet that requirement required dismissal.  493 U.S. at 33.  The Court rejected the petitioners' argument that the notice requirement should be deemed satisfied if a suit commenced without proper notice is stayed until 60 days after notice has been given.  *Id.* at 26-27.  The Court also found the petitioners' argument that the 60-day notice provision should be subject to equitable modification and cure unavailing, noting that the "equities do not weigh in favor of modifying statutory requirements when the procedural default is caused by petitioners' 'failure to take the minimal steps necessary' to preserve their claims."  *Id.* at 27-28 (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466 (1975)).  Moreover, the Court found that dismissal was required notwithstanding the fact that there had been a decision on the merits and that the litigation had consumed the time and energy of the District Court and the parties for nearly four years.  *Id.* at 32.

---

[4] The ERA and the CWA are both environmental statutes which serve similar legislative goals.  *See, e.g.*, *Lincoln Harbor*, 517 F. Supp. 3d at 302 (noting that the ERA's notice provision is intended to provide the regulating authority with an opportunity to "exercise its 'value judgments' and perhaps make a threshold decision whether to invest resources in defending the action") (citing *Howell Township v. Waste Disposal, Inc.*, 207 N.J. Super. 80 (N.J. App. Div. 1986)).  Moreover, the language of the notice provisions in the ERA and the CWA are extremely similar.  Thus, it is all the more appropriate to interpret the notice provisions consistently.

Once the Court concludes, as it should, that the 60-day period leading up to April 28, 2016, controls for purposes of notice, the jurisdictional inquiry ends given Plaintiffs' concessions.  At that moment, Count Six should be dismissed with prejudice because all of Plaintiffs' theories, ideas, "information and belief" and documents and interrogatory responses address timeframes years after April 2016.

> 2.      Plaintiffs try to justify the lack of notice prior to April 2016 by inventing a conflict of law, blaming the U.S. Attorney's Office, and making assertions "upon information and belief."

When asked for discovery regarding notice served on the Defendants or governmental agencies as required by the CWA, Plaintiffs responded:

> Because the Complaint and Amended Complaint alleged causes of action under laws with conflicting notice requirements (e.g., the False Claims Act (FCA) requiring filing under seal without notice, and the Clean Water Act (CWA) requiring pre-filing notice), the Plaintiffs/Relators substantially relied upon the Government's sealed investigation processes under the FCA as a means of providing initial notice to the requisite environmental agencies and departments. Upon information and belief, these agencies and departments received a copy of the original Complaint shortly after it was filed.

Mara Cert., Ex. B at 4.  There are three reasons why that response fails to save the CWA claim in this matter.

*First*, the "conflict" argument is a red herring.  Nothing in the FCA, nothing in the law of sealing, nothing at all prevented Plaintiffs from sending Defendants a detailed CWA notice on or before February 28, 2018, (*i.e.*, 60 days before the filing of the Original Complaint on April 28, 2016).  Plaintiffs' argument here is off the mark and utterly without merit.  Further, there is no law to support Plaintiffs' contention that the FCA trumps the CWA if plaintiff chooses to file them in the same complaint.  There is no legal requirement that the CWA and FCA must be joined in one complaint.  The Court should reject this "conflict" argument in its entirety.  It lacks any support factually or legally.

Plaintiffs' discovery responses harken back to their prior briefing for a "hybrid approach" that exists nowhere in CWA law.  *See* ECF No. 33 at 52-54 (Plaintiffs' Opposition to Defendants' Motion to Dismiss).  Under that Plaintiff-created theory, the CWA notice provisions may be appropriately ignored (and the alleged polluter kept in the dark and given no chance to correct a problem) as long as a relator files an FCA claim under seal in the same complaint.  There is, of course, no law for this.  To the contrary, the power of and need for vibrant notices to protect the environment are the congressional goals upon with the CWA notice provisions are based.

*Second*, there is no legal support to absolve Plaintiffs of their notice obligations and shift that obligation to the U.S. Attorney's Office.  Those obligations rest with the filer and Plaintiffs have provided nothing to justify blaming the U.S. Attorney's Office.  It is difficult to imagine that congress would ever agree with such an analysis for a number of reasons including practicality (FCA claims are run out of the local U.S. Attorney's Office, while CWA claims are managed out of Main Justice's ENRD).

*Third*, Plaintiffs make a statement regarding notice to governmental agencies "upon information and belief."  Mara Cert., Ex. B at 4.  No legal authority permits the CWA's notice provisions to be satisfied by "information and belief."  As examples of the "information," Plaintiffs argue that the CWA was satisfied by an online EPA tip from Plaintiffs' counsel (in 2018), and that there is attorney work product from Plaintiffs' counsel on a similar issue (in 2016).  Mara Cert., Ex. B at 4-5.  Plaintiffs quickly concede, however, that

> Plaintiffs, however, do not have any knowledge of the substantive information provided by government departments or agencies to the Defendants.

Mara Cert., Ex. B at 5.

*      *      *      *

In light of all this, it is difficult to comprehend how Plaintiffs can continue to pursue the CWA claim.  There are no cases assessing jurisdiction under the CWA which consider what the United States Attorney's Office said or did, who plaintiff's counsel told or what he wrote down in his notes, or anything of the like.  As discussed herein, district courts take a stringent approach,

14

analyzing whether a plaintiff provided the appropriate written notice under the statute and regulations. *See Hallstrom*, 493 U.S. at 23-24, 31-33 (affirming dismissal of RCRA claim with identical notice-and-delay provision where plaintiff failed to give notice to the EPA and the state agency as required by the statute); *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 471-73 (3d Cir. 1997) (directing dismissal of ESA suit where plaintiff failed to give notice to the Secretaries of Commerce and Interior as required by an identical notice-and-delay provision); *Scott*, 2009 WL 901135, at *2-4 (same under NJ ERA); *Protect Our Eagles' Trees (POETs) v. City of Lawrence, Kan.*, 715 F. Supp. 996, 998 (D. Kan. 1989) (same under CWA and cited approvingly by the Third Circuit in *Hawksbill Sea Turtle*, 126 F.3d at 471).

**C.**     **The First Amended Complaint filed in 2020**

1.      The October 2018 letter is facially deficient and does not constitute CWA notice.

Plaintiffs rely on the October 4, 2018 letter as evidence of CWA notice prior to the FAC, which was filed in November 2020, four and a half years after the Original Complaint. Plaintiffs tacitly concede that the October 2018 letter does not, by itself, satisfy the CWA. Plaintiffs make that concession for wise and obvious reasons. The following is a list of the requirements of a CWA notice that the letter fails to meet:

- The letter does not state "the full name … of the person giving notice." 40 C.F.R. § 135.3(a) (the person giving notice is the alleged plaintiff, not the attorney as 40 C.F.R. § 135.3(c) gives specific instructions for providing information of counsel). The letter does not name Rafi Khatchikian, Ivan Torres or any client for that matter. *Assateague Coastkeeper v. Alan and Kristin Hudson Farm*, 727 F. Supp. 2d 433, 438 (D. Md. 2010) (failure to adequately identify one of multiple plaintiffs in notice of CWA citizen suit required dismissal of that plaintiff; notice was not sufficient as to other named plaintiffs, whose addresses and phone numbers were not included); *Washington Trout v. Scab Rock Feeders*, 823 F. Supp. 819, 820-21 (E.D. Wash. 1993) (dismissal required where the plaintiff in suit was not named in the 60-day notice to defendant).

15

- The letter does not state the "address … of the person giving notice," giving only counsel's address.  40 C.F.R. § 135.3(a).  *Assateague*, 727 F. Supp. 2d at 438.

- The letter does not state the "telephone number of the person giving notice."  40 C.F.R. § 135.3(a).  *Sierra Club Ohio Chapter v. City of Columbus*, 282 F.Supp.2d 756, 775-76 (S.D. Ohio 2003) (failure by plaintiffs to provide their telephone numbers in notice letter to city was reason enough to dismiss their citizen suit under the CWA against city for lack of jurisdiction, even if plaintiffs gave their full names and addresses, and city could have looked up telephone numbers in phone book, could have called directory assistance, or could have asked plaintiffs' counsel for their phone numbers).

- The letter does not state the "the date or dates of such violation," merely stating that the violation occurred "[o]ver the last 3 plus years[.]"  40 C.F.R. § 135.3(a).  *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr., Inc.*, 891 F. Supp. 152, 154-155 (S.D.N.Y. 1995) (citizen suit dismissed for failure to submit sufficient information pertaining to the date of alleged violation, which frustrates the objectives of the 60–day notice requirement).

- The October 4, 2018 letter is addressed to "To Whom It May Concern" at "New York Waterways."  The letter references only "Billybey Ferry Co.," and "various individuals."  It makes no reference to Alan Warren, Port Imperial Ferry Corporation, Arthur Imperatore, or Romulus Development Corp.  Accordingly, those defendants did not receive notice as the CWA requires "certified mail addressed to, or by personal service upon, the owner or managing agent of the building, plant, installation, vessel, facility, or activity alleged to be in violation."  40 C.F.R. § 135.2(a)(1).  The October 4, 2018 letter does nothing to alert those defendants of a CWA citizen suit and accordingly there is no jurisdiction over those defendants.

- The letter does not contain information regarding "the activity alleged to constitute a violation," referring only generally of "improperly dispos[ing]."  Mara Cert., Ex. C.  Nor does it reference to whether discharge was wholly illegal or violation of a permitted discharge limitation.  40 C.F.R. § 135.3(a).  *See Catskill Mountains Chapter of Trout*

16

*Unlimited, Inc*, 273 F.3d at 488 ("To state a claim based on unpermitted discharges, the plaintiff must allege some pollutant that was discharged without a permit.").

- The letter does not contain "sufficient information to permit the recipient to identify the specific standard, limitation or order alleged to have been violated" speaking of "sullage," which is a general term.  40 C.F.R. § 135.3(a).

- The letter purports to have been sent via Federal Express, not "certified mail addressed to, or personal service upon the owner or managing agent of the building, plant, installation, vessel, facility, or activity alleged to be in violation."  40 C.F.R. § 135.2(a)(1).

- NYWW is a corporation and, thus, "a copy of such notice also shall be mailed to the registered agent, if any, of such corporation in the State in which such violation is alleged to have occurred."  40 C.F.R. § 135.2(a)(1).

- The October 4, 2018 letter was sent to environmental agencies "via email" (Mara Cert., Ex. B at 4), and thus was not "mailed to the Administrator of the Environmental Protection Agency, the Regional Administrator of the Environmental Protection Agency for the region in which such violation is alleged to have occurred, and the chief administrative officer of the water pollution control agency for the State in which the violation is alleged to have occurred."  40 C.F.R. § 135.2(a)(1).

Given these deficiencies, it is apparent why Plaintiffs never contend that the October 2018 letter is, on its face, sufficient to satisfy the CWA.  (Even if the October 2018 were a model of CWA notice, it would not matter because, as discussed, *supra*, the notice is measured as to the Original Complaint, not the FAC.)  Because the October 2018 letter cannot stand alone for CWA notice, Plaintiffs try to pair it with disparate other documents as part of their "augmentation" theory discussed in the next Section.

> 2.  Plaintiffs try to save the October 2018 letter with their "augmentation" theory.

Conceding that the letter is insufficient, Plaintiffs invite this Court to break new legal ground and hold that the CWA notice provisions are satisfied if a group of disparate documents,

statements and allegations all coalesce into statutory notice via "augmentation."  Plaintiffs' theory

on this is best demonstrated by their discovery responses, one of which states:

> Plaintiffs state that, while the case was still under seal and prior to filing the Amended Complaint, Plaintiffs' counsel sent a CWA Notice Letter to NYWW via FedEx on October 4, 2018.  *See* REL000318-21 and REL000327. This notice to Defendants was augmented by a copy of the sealed Complaint, which was provided via email to Defendants' counsel by the U.S. Attorney's Office for the District of New Jersey (USAO-NJ) on December 10, 2018.  *See* REL000351. This notice to the Defendants was also augmented by numerous communications and meetings between counsel for Defendants and USAO-NJ and/or Plaintiffs' counsel, Mr. Fitzgerald *See* [pointing to various documents produced by Plaintiffs in response to discovery requests].

Mara Cert., Ex. A at 5.  Another response paints the augmentation theory as such:

> Relators assert that Defendants received information that satisfies the purpose [of] the CWA's citizen suit notice requirement through various communications from or with the United States Attorney's Office for the District of New Jersey, other federal and state government agencies, and Relators' counsel more than 60-days prior to the unsealing of this case and service of process of a Summons and the Amended Complaint upon Defendants.

Mara Cert., Ex. B at 3.

There is no legal support for the "augmentation" theory.  All the law is contrary to

Plaintiffs' position.

## VI.    <u>CONCLUSION</u>

Defendants incorporate their prior filings related to this Motion to Dismiss and jurisdictional discovery.  *E.g.*, ECF Nos.  19, 28, 36 & 48.  Defendants further incorporate and rely upon all filings by Defendant Warren to the extent they neither contradict nor diminish Defendants' positions.

For all these reasons, Plaintiffs have failed to meet their burden to establish subject matter jurisdiction.  Count Six should be dismissed with prejudice.

Respectfully,

**BALDASSARE & MARA, LLC**

*Attorneys for Defendants Port Imperial Ferry Corporation, Port Imperial Ferry Corporation d/b/a NY Waterway, Arthur Imperatore, Romulus Development Corp., and Billybey Ferry Company LLC*

By: _Jennifer Mara_

Jennifer Mara, Esq.

By: _Michael Baldassare_

Michael Baldassare, Esq.

Date:   July 29, 2022

19